Vassilakis, Appellant, *v.* Vassilakis.

Argued September 26, 1951; reargued May 26, 1952. Before Drew, C. J., Stern, Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*George W. Lamproplos,* with him *Myron W. Lamproplos* and *Cassidy & Lamproplos,* for appellant.

*Robert Engel,* with him *David H. Weiss* and *Weiss & Frick,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, June 24, 1952:

This is an appeal from a decree of the Orphans' Court of Westmoreland County sustaining preliminary

objections and dismissing petition for an *order to pay* a legacy which had *not* been awarded by an adjudication.

This proceeding was by a petition of Ioanna Vassilakis, of Greece (sister of testator), for a citation directed against Diamantis Vassilakis (brother of petitioner and testator, and executor under the will of the decedent) and Stephen Vassilakis (nephew of testator, a son of the brother Diamantis) *"defendants"*, to show cause why Diamantis should not pay petitioner $2,000 and Stephen pay petitioner $500 (or in the alternative why Diamantis should not pay the entire $2,500), such sums being one-half of the proceeds of two life insurance policies wherein defendants were respectively named as beneficiaries, the proceeds thereof having been paid by the insurance companies to the named beneficiaries in accordance with the terms of the policies. The basis for such demand is that testator *by his will* directed, *inter alia,* that his "life insurance money" be equally divided between Diamantis and petitioner, but that each "defendant", as designated insurance beneficiary, collected the insurance proceeds and refused to pay petitioner a one-half share.

While not disclosed by the docket entries printed in the paper books, an examination of the *original* record reveals that when Diamantis applied for and secured letters testamentary on testator's estate on November 21, 1944, he deposed that he was a resident of Monessen, Pa., and that testator was a resident of Westmoreland County, possessed of *personal estate* to the value of $500 and of *real estate* to the value of $5,000 (specifically described in the assessment for Pennsylvania Transfer Inheritance Tax). That record also discloses that Diamantis, as executor, filed an account of his administration of the estate on July 16, 1946. The account listed assets of $1,116.67 and disbursements of $7,705.82,

leaving nothing for distribution. The account was audited and confirmed September 6, 1946.

On December 9, 1947, on petition of testator's sister (petitioner) a citation was awarded in partition for the *real estate* above mentioned; and on June 17, 1949, an amended petition in partition was filed. Nothing further appears to have been done and the real estate apparently is still in testator's name.

On December 21, 1948, according to the printed docket entries, the present citation to pay the legacy was issued. The *original record* further reveals that Diamantis died intestate on April 11, 1949, and that letters of administration on *his* estate were granted to Steve on May 17, 1949, who on May 27, 1949, was formally made party to these proceedings.

On June 17, 1949, a citation was awarded, directed to Steve Vassilakis, administrator of the estate of Diamantis, for a review of the account and adjudication of Diamantis as executor under testator's will. No further action, however, appears to have been taken upon this application.

With the record as above indicated, on November 10, 1949, Stephen Vassilakis, *as defendant,* filed preliminary objections to the present petition which read as follows: "The defendant has a good and sufficient defense to the claim of the plaintiff which does not require the production of evidence to sustain it, to-wit: That the provisions of the will of Nicholas Vassilakis deceased, do not entitle the Plaintiff to any part of the moneys collected by the defendant and Diamantis Vassilakis on the insurance policies on the life of the said decedent." The court below sustained the preliminary objections and dismissed the petition. The appeal followed.

The filing of preliminary objections to the present petition was proper practice. The statutory jurisdiction

of the Orphans' Court is exercised under rules and principles of equity: *Brinker v. Brinker,* 7 Pa. 53; *Willard's Appeal,* 65 Pa. 265; *Douglas's Estate,* 303 Pa. 227, 154 A. 376; *Mellinger's Estate,* 334 Pa. 180, 5 A. 2d 321. Equity Rule 15 abolished demurrers and Rule 48 substituted preliminary objections.

The reason assigned by the court for sustaining the preliminary objections to the petition was as before stated that the beneficiaries named in a standard life insurance policy cannot be changed by a will. The objections, however, must be sustained upon a different ground. No order to pay a legacy may be made unless there has been a preceding accounting and an award of the legacy: Vol. 1 Remick Pennsylvania Orphans' Court Practice sec. 161, p. 477, et seq.; Hunter Pennsylvania Orphans' Court Commonplace Book Vol. 1, p. 327, et seq. and Vol 2, p. 973, et seq.; *Yeisley Estate,* 358 Pa. 200, 203, 56 A. 2d 205. The record discloses facts and circumstances which require either a review and opening of the existing account followed by an adjudication or the stating and audit of a second account, even though such second account be what is termed a "nothing-nothing" account.

As the legatee claims that the proceeds of the insurance formed part of the testator's estate, the application would be to surcharge the fiduciary for having received such assets and having applied them to his own use. Furthermore, if the petition for review is allowed, there are many of the items of credit which are being attacked by the petitioner as improper credits. All such matters must be determined by the auditing judge. The rights of the parties must be appropriately adjudicated followed by a definitive decree.

Should it ultimately be determined that a legacy is due petitioner, the legacy will remain a lien upon testator's real estate not specifically devised: Wills Act

of 1917 P. L. 403, 20 PS 241; Hunter Pennsylvania Orphans' Court Commonplace Book Vol. 2, p. 786, et seq.

If upon the audit of an account the auditing judge should decree that testator's will did not change the beneficiaries in the life insurance policies (as he did when sustaining the preliminary objections), a formidable obstacle still remains, viz.: that of *election in equity*. Mr. Bispham in his Principles of Equity, sec. 295, p. 497 (Tenth Edition), defines this principle. It is ". . . a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of, in favor of a third party, by virtue of the same paper". See also *Fleming's Estate*, 217 Pa. 610, 615, 66 A. 874. In *Sharar's Estate*, 136 Pa. Superior Ct. 478, 484, 7 A. 2d 506 which was a situation almost parallel with the present case it is said: "If appellant insists on retaining the proceeds of the policy she should be required to make compensation to appellee from the assets of the estate, and she can receive no benefit under the will until appellee has realized an amount equal to the proceeds of the policy from the assets of testator's estate."

Whether the insurance policies were in the possession of the beneficiaries therein named or in the possession of the insured at the time of his death is immaterial to the question of the *jurisdiction* of the Orphans' Court so far as Diamantis Vassilakis or his estate is concerned. As the qualified executor of the decedent's will, Diamantis was answerable to the Orphans' Court for the estate committed to his care and its proper distribution. He was both a beneficiary under a policy of insurance on the decedent's life and a legatee under the decedent's will, which sought to control the distribution of the proceeds of the insurance. While the

account already filed and audited showed no balance for distribution, there would be a fund available for distribution if the real estate be sold to pay the legacy. As Diamantis is now dead, the duty of responding for him as a former fiduciary in respect of the equitable election arising under the testator's will continues to attach to his personal representative.

There are other questions which may require adjudication when the account is audited, viz.: What jurisdiction, if any, did the Orphans' Court have over Stephen Vassilakis, *individually,* who was neither a fiduciary of the testator nor a beneficiary under the will? Does a testator's physical possession of insurance policies, on his life, with designated beneficiaries, constitute such policies assets of decedent's estate? These questions, including the effect of the will upon designated insurance beneficiaries, are not now properly before us and concerning which we expressly refrain from deciding. Such matters must first be determined at the audit of an appropriate account followed by a definitive decree.

The decree as modified is affirmed, with leave to proceed as herein indicated. Costs to abide the event.